IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-15-281 |
| | * | |
| **SEAN MICHAEL MIDGETTE,** | | |
| | * | |
| Defendant. | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Sean Michael Midgette was sentenced to 101 months of imprisonment after he pleaded guilty to one count of conspiracy to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846, and one count of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). ECF Nos. 64, 89. Pending before the Court is Mr. Midgette's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C § 3582(c)(1)(A)(i). ECF No. 120. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons that follow, Mr. Midgette's Motion is denied.

**I.     BACKGROUND**

**A.  Procedural Background**

On May 20, 2015, Mr. Midgette and his co-defendant were charged with conspiracy to commit Hobbs Act robbery ("Count I"); conspiracy to distribute, and possess with intent to distribute, cocaine ("Count II"); conspiracy to possess a firearm in furtherance of a drug trafficking crime and crime of violence ("Count III"); possession of a firearm in furtherance of a

drug trafficking crime and crime of violence ("Count IV"); felon in possession of a firearm ("Count V"); and aiding and abetting with respect to each count. ECF No. 20.

On September 19, 2015, Mr. Midgette pleaded guilty to Counts II and IV. ECF No. 64. With respect to Count II, Mr. Midgette pleaded guilty to the lesser-included offense of conspiracy to distribute, and possess with intent to distribute, 500 or more grams of cocaine. *Id.* With respect to Count IV, he pleaded guilty to possessing a firearm in furtherance of a drug trafficking crime. *Id.* On July 18, 2016, the Court sentenced him to 101 months of imprisonment, consisting of 41 months for Count II and the mandatory minimum consecutive sentence of 60 months for Count IV. ECF No. 89. On the Government's motion, the Court dismissed the remaining counts and the judgment became final on July 20, 2016. *Id.*

On October 6, 2020, Defendant filed the pending Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), citing his vulnerability to COVID-19 due to several medical conditions. ECF No. 120. The Government filed an Opposition on October 20, 2020, ECF No. 32.[1] Defendant filed a Reply on October 29, 2020, ECF No. 127, and a supplement on October 31, 2020. ECF No. 130

**B. Factual Background**

As part of his plea agreement, Mr. Midgette agreed to a statement of facts. ECF No. 64-1; ECF No. 74 at 5-8. The Court will summarize the facts most relevant to the pending motion.

On April 8, 2015, Mr. Midgette's co-defendant, Bryan Tiggle, met with an undercover agent working for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("UC"). This meeting, as well as subsequent meetings, was recorded by hidden audio and video devices. During the April 8 meeting, UC explained to Mr. Tiggle that UC planned to rob a cocaine stash

---

[1] Defendant's Motion and the Government's Opposition are filed under seal with accompanying Motions to Seal, ECF Nos. 121, 125, 128, which are granted.

2

house, which was protected by at least one armed guard, and would split the proceeds of the stolen cocaine (expected to be ten to twelve kilograms) with anyone who helped him commit the robbery. Mr. Tiggle agreed, discussed how they could execute the robbery, and told UC that he would bring another individual to a second meeting with UC. That individual was Mr. Midgette.

Mr. Midgette met with UC and Mr. Tiggle on April 23, 2015. UC explained that he was a disgruntled drug courier and that he intended to rob the stash house. Mr. Midgette asked UC several questions about the number of individuals that would be located inside the stash house and the physical description of the armed guards. Mr. Midgette then laid out a plan for the robbery. Mr. Midgette also explained how they would split the cocaine three ways and that he already had a connection to whom he would sell his portion of the cocaine.

Further discussions between UC, Mr. Tiggle, and Mr. Midgette took place the next day. Mr. Midgette stated that he was "all the way in" and that he had "an army of guns." He further stated "I have all types of guns. I love guns. I got guns everywhere," and "they kill." He also noted that he had full body armor and a vest that said "SWAT" on it.

During yet another meeting, Mr. Midgette indicated to UC that he had a backup plan if Mr. Tiggle was late on the day of the robbery. When UC expressed concern about robbing a location with an armed guard, Mr. Midgette replied "I've been going in a house with people with guns, and peoples, like six, seven peoples" and that "we're gonna run in there and yell 'Police'" and by the time the occupants realized they were being robbed "It's too late, and they will be laid down and tied up."

On the day of the planned robbery, UC spoke to both Mr. Midgette and Mr. Tiggle, each of whom confirmed they were ready to commit the robbery. UC offered to let Mr. Midgette and Mr. Tiggle put their firearms in UC's vehicle and Mr. Midgette placed a duffle bag in UC's

vehicle. They drove to what Mr. Midgette believed was a location where they would get further details and instead were placed under arrest. From inside Mr. Midgette's duffle bag, officers recovered two firearms, a body armor vest, and 64 rounds of ammunition. ECF No. 64-1.

## II. DISCUSSION

Asserting that he is at serious risk of becoming severely ill from COVID-19 due to his preexisting medical conditions, Mr. Midgette moves for a reduction in his sentence for "extraordinary and compelling reasons" pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 30. The Court reviews the framework applicable to Defendant's request before assessing whether Defendant has satisfied its requirements.

### A. Governing Provisions

Recently modified by Section 603(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5238 (2018), 18 U.S.C. § 3582(c) bars courts from modifying terms of imprisonment once imposed unless certain conditions are met. *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). In relevant part, § 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1).

A complementary provision, 28 U.S.C. § 994(t), provides that the U.S. Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *See United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. Apr. 6, 2020). The Commission has provided this description at § 1B1.13 of the U.S. Sentencing Guidelines, which states in relevant part that:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that–
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to § 1B1.13 further details the Commission's understanding of "extraordinary and compelling reasons," which include if a defendant has been diagnosed with a terminal illness or other serious physical or medical condition, is above the age of 65 and is in deteriorating health due to aging, has experienced certain extenuating family circumstances, or if "[o]ther [r]easons" arise that have been "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling reason[s] other than, or in combination with, the reasons described" in the Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(D). The Bureau of Prisons ("BOP") has offered its determination in a Program Statement numbered 5050.50 and titled

"Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)."[2]

Judges in this district and elsewhere have found, however, that § 1B1.13 and its Application Note are inconsistent with the First Step Act. As Judge Chuang of this Court explained in *United States v. Mel*, while § 1B1.13 "identifies certain specific scenarios under which a sentence reduction could be warranted, it nevertheless permits a reduction based only on meeting the broad category of 'extraordinary and compelling reasons'" as determined by BOP. No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020) (citing U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(D)). Judge Chuang reasoned, however, that "[s]ince the First Step Act changes the law to allow a compassionate release reduction to be granted by the Court without input from the BOP, the pre-First Step Act references in the policy statement to determinations by the BOP are outdated and not binding." *Id.* Similarly, in *United States v. Decator*, Judge Blake held that "[w]hile Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." 2020 WL 1676219 at *2 (reaching this conclusion after a careful review of the relevant provisions and recent case law).

This Court recently found that these analyses are persuasive and therefore adopted the same conclusions. *See United States v. Lazarte*, No. GJH-16-296, 2020 WL 3791977, at *3 (D. Md. July 7, 2020). Accordingly, the Court's consideration of sentence reduction motions follows the three steps established by § 3582(c)(1)(A) as modified by the First Step Act. First, assuming the defendant has exhausted administrative remedies, the Court considers whether a reduction is

---

[2] The Program Statement, issued January 17, 2019, is available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 28, 2020).

warranted for extraordinary and compelling reasons, the meaning of which is a matter of the Court's "independent discretion." *Decator*, 2020 WL 1676219, at *2.

Next, the Court assesses whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The applicable Policy Statement remains § 1B1.13, despite its partial nullification as a result of the First Step Act. Accordingly, pursuant to the Policy Statement, the Court must find that "[e]xtraordinary and compelling reasons warrant the reduction;"[3] that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and that "[t]he reduction is consistent with [the Sentencing Commission's] policy statement." U.S.S.G. § 1B1.13. Finally, § 3582(c)(1)(A) provides that after considering the Policy Statement, the Court must "consider[] the factors set forth in section 3553(a) to the extent that they are applicable."

### B. Exhaustion of Administrative Remedies

As noted previously, § 3582(c)(1)(A) requires that a defendant seeking a modification of a term of imprisonment "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Here, in March 2020, Mr. Midgette filed a request for reduction of his sentence with the warden of Fort Dix, which was denied on May 19, 2020. ECF No. 120-17. He resubmitted his request multiple times only to be denied again. ECF No. 120-18, 120-19, 120-20. Thus, Mr. Midgette has properly exhausted his administrative remedies.

---

[3] A provision of the Policy Statement not at issue here, § 1B1.13(1)(B), provides an alternative to finding extraordinary and compelling reasons under § 1B1.13(1)(A) for Defendants who are at least 70 years old and have served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c).

### C. Extraordinary and Compelling Reasons

The Court next considers whether Mr. Midgette has sufficiently demonstrated extraordinary and compelling reasons warranting a reduction of his sentence. Mr. Midgette asserts that he suffers from medical conditions including stage two chronic kidney disease, hypertension, and prediabetes, which he asserts significantly increase his risk of serious complications from COVID-19. ECF No. 120 at 10. Additionally, Defendant claims that BOP facilities, and Fort Dix in particular, have become "hotbeds" for COVID-19.[4] *Id*. at 16. Although the Government contends that the Defendant's motion exaggerates the severity of his health conditions and the state of COVID-19 at Fort Dix, ECF No. 124 at 8, they nonetheless concede that Mr. Midgette has established that "extraordinary and compelling reasons" exist to support his Motion. The Court agrees and moves to the next phase of the analysis.

### D. Additional Considerations

Although Mr. Midgette has demonstrated extraordinary and compelling reasons for release, release is nonetheless inappropriate under both the Sentencing Commission's Policy Statement at § 1B1.13 and the 18 U.S.C. § 3553(a) sentencing factors.

As noted previously, the Policy Statement directs that to proceed with a sentence reduction, the Court must find that "[e]xtraordinary and compelling reasons warrant the reduction;" that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and that "[t]he reduction is consistent with [the Sentencing Commission's] policy statement." U.S.S.G. § 1B1.13. To determine whether a defendant is a danger under § 3142(g), courts consider the (1) "nature and circumstances of the offense charged"; (2) "weight of the evidence against the person"; (3) "history and

---

[4] Since the original filing of the Motion, Defendant has filed a supplement indicating that Mr. Midgette did, in fact, contract COVID-19. ECF No. 130.

characteristics of the person"; and (4) "nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

With respect to the sentencing factors, § 3553(a)(1), "the nature and circumstances of the offense and the history and characteristics of the defendant," and § 3553(a)(2), "the need for the sentence imposed" to further several purposes, are relevant in weighing compassionate release motions. *See United States v. Williams*, No. 19-cr-284-PWG, 2020 WL 3447757, at *5 (D. Md. June 24, 2020). The purposes listed in § 3553(a)(2) include "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

After considering the § 3142(g) factors and reconsidering the § 3553(a) factors, the Court concludes that Defendant poses a danger to the community and is therefore not eligible for compassionate release. On the one hand, the letter from Mr. Midgette, the character letters, and the re-entry plan included in Defendant's Motion paint a picture of someone who is on his way to rehabilitation. The Court certainly hopes that Mr. Midgette continues to follow that path. Additionally, the Court expresses its sincere concern for Mr. Midgette's health, as well as for all of those being impacted by this global pandemic. However, as detailed above, Mr. Midgette conspired to commit a dangerous armed robbery of a drug stash house, where it was expected they would have to encounter and subdue armed guards. He boasted to his co-conspirator and an undercover officer that he had an arsenal of weapons and a bullet proof vest, and demonstrated that these were not hollow boasts by bringing them to the staging location from whence he was

prepared to carry out the planned attack. And while Defendant's Motion correctly notes that he has served the majority of his sentence, the sentence itself was a below-guideline sentence for a crime involving the possession of a number of firearms and a clear and immediate plan by the Defendant to use them. A further reduction would be inconsistent with the § 3553(a) factors.

### III. CONCLUSION

For the foregoing reasons, the Motions to Seal, ECF Nos. 121, 125 and 128 are **GRANTED;** the Consent Motion to adopt Briefing Schedule, ECF No. 123 is **GRANTED**; and Defendant's Emergency Motion for Compassionate Release Pursuant to 18 U.S.C § 3582(c)(1)(A)(i), ECF No. 120, is **DENIED**.


Date: <u>December   4, 2020</u>                             __/s/_____
                                                             GEORGE J. HAZEL
                                                             United States District Judge